*PRELIMINARY PRINT*

VOLUME 598 U. S. PART 2
PAGES 411–431

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

MAY 11, 2023

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SANTOS-ZACARIA AKA SANTOS-SACARIAS *v.* GARLAND

## CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 21–1436.   Argued January 17, 2023—Decided May 11, 2023

Petitioner Leon Santos-Zacaria (who goes by the name Estrella) is a noncitizen in removal proceedings. She sought protection from removal, which an Immigration Judge denied. Santos-Zacaria appealed to the Board of Immigration Appeals, which upheld the Immigration Judge's decision. She then filed a petition for review in the Fifth Circuit under 8 U. S. C. § 1252, alleging that the Board had impermissibly engaged in factfinding that only the Immigration Judge could perform. The Fifth Circuit dismissed Santos-Zacaria's petition in part, finding that she had not satisfied § 1252(d)(1)'s exhaustion requirement. Section 1252(d)(1) provides that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." The Fifth Circuit raised the exhaustion issue *sua sponte* based on its characterization of § 1252(d)(1)'s exhaustion requirement as jurisdictional. And the Fifth Circuit concluded that Santos-Zacaria failed to exhaust because she failed to raise her impermissible-factfinding claim to the Board in a motion for reconsideration before filing her petition for judicial review.

*Held*:

1. Section 1252(d)(1)'s exhaustion requirement is not jurisdictional. Pp. 416–423.

(a) A "jurisdictional" prescription sets the bounds of the "court's adjudicatory authority," *Kontrick* v. *Ryan*, 540 U. S. 443, 455, while nonjurisdictional rules govern how courts and litigants operate within those bounds. The "jurisdictional" tag carries potentially "[h]arsh consequences." *Fort Bend County* v. *Davis*, 587 U. S. ——, ——. For example, courts must enforce jurisdictional rules *sua sponte*, even in the face of a litigant's forfeiture or waiver. *Hamer* v. *Neighborhood Housing Servs. of Chicago*, 583 U. S. 17, —— – ——. To ensure that courts impose such consequences only when Congress unmistakably has so instructed, a rule is treated as jurisdictional "only if Congress 'clearly states' that it is." *Boechler* v. *Commissioner*, 596 U. S. ——, ——. Pp. 416–417.

(b) Section 1252(d)(1) lacks the clear statement necessary to qualify as jurisdictional. First, exhaustion requirements are quintessential claim-processing rules, designed to promote efficiency in litigation. Treating an exhaustion requirement as jurisdictional would disserve

that very interest. Second, § 1252(d)(1)'s language differs substantially from more clearly jurisdictional language in related statutory provisions. Elsewhere, including in provisions enacted at the same time and in the same section as § 1252(d)(1), Congress specified that "no court shall have jurisdiction" to review certain matters. See, *e. g.*, §§ 1252(a)(2)(A), (a)(2)(B), (a)(2)(C), 1182(a)(9)(B)(v), (d)(3)(B)(i). Taken together, these two features of § 1252(d)(1) establish that it is not clearly jurisdictional. Pp. 417–420.

(c) Given the clear-statement rule, the Government offers no persuasive reason to treat § 1252(d)(1) as jurisdictional. First, merely that a statute addresses the "court" and limits "review" does not necessarily mean the statute governs the court's *jurisdiction*. Second, the Government fails to show that § 1252(d)(1) clearly carried forward any understanding that a prior version of § 1252(d)(1) (former § 1105a(c)) was jurisdictional. Finally, § 1252(d)(1)'s placement within § 1252 is insufficient to establish that § 1252(d)(1) is clearly jurisdictional. Pp. 420–423.

2. Section 1252(d)(1) does not require noncitizens to request discretionary forms of review, like reconsideration of an unfavorable Board of Immigration Appeals determination. Pp. 423–431.

(a) Section 1252(d)(1) requires exhausting only remedies "available . . . as of right." In the context relevant here—review of a legal claim— that phrase means review that is guaranteed, not discretionary. Reconsideration by the Board, however, is discretionary. Board reconsideration is therefore not available "as of right," and § 1252(d)(1) does not require a noncitizen to pursue it. Pp. 424–425.

(b) The Government cannot show that exhausting remedies "available . . . as of right" requires seeking Board reconsideration. The Government emphasizes a noncitizen's right to file a motion to reconsider. But the right to *request* discretionary review does not make a remedy available as of right. Nor does § 1252(d)(1) draw a distinction, suggested by the Government, between those remedies made discretionary by statute and those made so by regulation. In addition, although the decision whether to grant reconsideration is reviewable for abuse of discretion, it remains a matter of discretion all the same. Finally, if seeking reconsideration qualified as exhausting a remedy "available . . . as of right," the statutory scheme would become incoherent. Noncitizens would need to seek reconsideration in every case. Yet the statute is designed around pursuing judicial review and agency reconsideration in parallel. The Board would be flooded with reconsideration motions that noncitizens would not otherwise file. And courts would be flooded with pre-reconsideration petitions for review that, under the Government's interpretation, would be unexhausted and therefore pointless. Pp. 425–429.

(c) Alert to the problems with requiring noncitizens to *always* seek reconsideration for exhaustion purposes, the Government instead would re-

Opinion of the Court

quire seeking reconsideration only *sometimes*: when the noncitizen is raising an issue not previously presented to the agency. But seeking reconsideration does not qualify as a remedy "available . . . as of right" sometimes and not others. Instead, it does not qualify at all. The Government's approach, moreover, would not fix the problem of producing pointless, unexhausted petitions for review. And it would introduce practical difficulties for courts, noncitizens, and the Board. Pp. 429–430.

22 F. 4th 570, vacated in part and remanded.

JACKSON, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SOTOMAYOR, KAGAN, GORSUCH, KAVANAUGH, and BARRETT, JJ., joined. ALITO, J., filed an opinion concurring in the judgment, in which THOMAS, J., joined, *post*, p. 431.

*Paul W. Hughes* argued the cause for petitioner. With him on the briefs were *Michael B. Kimberly, Andrew A. Lyons-Berg, Benjamin J. Osorio, Eugene R. Fidell, Charles A. Rothfeld*, and *Andrew J. Pincus.*

*Yaira Dubin* argued the cause for respondent. On the brief were *Solicitor General Prelogar, Principal Deputy Assistant Attorney General Boynton, Deputy Solicitor General Gannon, Colleen E. Roh Sinzdak, John W. Blakely, Andrew C. MacLachlan*, and *Aimee J. Carmichael.**

JUSTICE JACKSON delivered the opinion of the Court.

Under 8 U. S. C. § 1252(d)(1), a noncitizen who seeks to challenge an order of removal in court must first exhaust certain administrative remedies. This case presents two questions regarding that statutory provision. For the reasons explained below, we hold that § 1252(d)(1) is not jurisdictional. We hold further that a noncitizen need not request discretionary forms of administrative review, like reconsideration of an unfavorable Board of Immigration Appeals de-

---

*Briefs of *amici curiae* urging reversal were filed for the Constitutional Accountability Center et al. by *Elizabeth B. Wydra, Brianne J. Gorod, Trina Realmuto*, and *Kristin MacLeod-Ball*; and for Legal Services Providers by *Mark C. Fleming, Charles C. Bridge*, and *Melissa Crow.*

A brief of *amici curiae* was filed for Former Immigration Judges et al. by *Dan L. Bagatell.*

termination, in order to satisfy § 1252(d)(1)'s exhaustion requirement.[1]

## I

Petitioner Leon Santos-Zacaria (who goes by the name Estrella) fled her native Guatemala in her early teens. She has testified that she left that country, and fears returning, because she suffered physical harm and faced death threats as a transgender woman who is attracted to men.

Santos-Zacaria eventually sought refuge in the United States. Her first stay in the country was brief, and she was removed by immigration authorities in 2008. In 2018, she returned and was apprehended again by immigration authorities.

At that point, Santos-Zacaria sought protection from removal, including withholding of removal based on the likelihood she would be persecuted in Guatemala. See 8 U. S. C. § 1231(b)(3)(A). An Immigration Judge within the Department of Justice entered an order reinstating Santos-Zacaria's prior removal order and denying the protection she sought.

On appeal within the Department, the Board of Immigration Appeals upheld the Immigration Judge's denial of withholding of removal. The Board agreed with Santos-Zacaria in part, determining that she had suffered past persecution in Guatemala and was therefore entitled to a presumption of future persecution. But the Board found that this presumption was rebutted (which was an issue that the Immigration Judge had not reached).

Santos-Zacaria then filed a petition for review in the U. S. Court of Appeals for the Fifth Circuit under 8 U. S. C. § 1252. Her petition contended, among other things, that when the Board concluded that the presumption of future persecution was rebutted, it had impermissibly engaged in factfinding that only the Immigration Judge could perform.

---

[1] This opinion uses the term "noncitizen" as equivalent to the statutory term "alien." See, *e. g.*, *Nasrallah* v. *Barr*, 590 U. S. ——, ——, n. 2 (2020).

Opinion of the Court

In a 2-to-1 decision, the Court of Appeals dismissed Santos-Zacaria's impermissible-factfinding challenge for lack of jurisdiction, on the ground that she had failed to exhaust administrative remedies under §1252(d)(1). 22 F. 4th 570, 573 (2022). The Government had not raised exhaustion, but the Court of Appeals did so *sua sponte* because it characterized §1252(d)(1) as establishing a jurisdictional requirement. The court further held that, because Santos-Zacaria had not raised the impermissible-factfinding challenge in a motion for reconsideration before the Board prior to filing her petition with the court, she had not satisfied §1252(d)(1)'s exhaustion requirement.

There is disagreement among the Courts of Appeals concerning the two issues presented in this case: (1) whether §1252(d)(1)'s exhaustion requirement is jurisdictional,[2] and (2) whether §1252(d)(1) requires seeking discretionary administrative review, like reconsideration by the Board of Immigration Appeals.[3] We granted certiorari to resolve these conflicts. 598 U. S. —— (2022).

_____

[2] Compare, *e. g.*, *Chavarria-Reyes* v. *Lynch*, 845 F. 3d 275, 279 (CA7 2016) (not jurisdictional), with, *e. g.*, *García-Cruz* v. *Sessions*, 858 F. 3d 1, 7 (CA1 2017) (jurisdictional); *Lin* v. *Attorney Gen. of U. S.*, 543 F. 3d 114, 120, and n. 6 (CA3 2008) (same); *Massis* v. *Mukasey*, 549 F. 3d 631, 638 (CA4 2008) (same); *Omari* v. *Holder*, 562 F. 3d 314, 318–319 (CA5 2009) (same); *Ramani* v. *Ashcroft*, 378 F. 3d 554, 558–559 (CA6 2004) (same); *Molina* v. *Whitaker*, 910 F. 3d 1056, 1061 (CA8 2018) (same); *Alvarado* v. *Holder*, 759 F. 3d 1121, 1127, and n. 5 (CA9 2014) (same); *Robles-Garcia* v. *Barr*, 944 F. 3d 1280, 1283–1284 (CA10 2019) (same); and *Alim* v. *Gonzales*, 446 F. 3d 1239, 1253 (CA11 2006) (same), with, *e. g.*, *Zhong* v. *United States Dept. of Justice*, 480 F. 3d 104, 119–122 (CA2 2007) (jurisdictional as to remedy exhaustion but not issue exhaustion).

[3] Compare, *e. g.*, *Olivas-Motta* v. *Whitaker*, 910 F. 3d 1271, 1279–1280 (CA9 2018) (not required); and *Indrawati* v. *United States Atty. Gen.*, 779 F. 3d 1284, 1299 (CA11 2015) (same), with, *e. g.*, *Meng Hua Wan* v. *Holder*, 776 F. 3d 52, 57 (CA1 2015) (required when raising issues not previously presented to the agency); *Omari*, 562 F. 3d, at 319–320 (same); *Mencia-Medina* v. *Garland*, 6 F. 4th 846, 848–849 (CA8 2021) (same); and *Sidabutar* v. *Gonzales*, 503 F. 3d 1116, 1122 (CA10 2007) (same).

II

Section 1252(d)(1) provides: "A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." The first question before us is whether this provision ranks as jurisdictional. We hold that it does not.

A

A "jurisdictional" prescription sets the bounds of the "court's adjudicatory authority." *Kontrick* v. *Ryan*, 540 U. S. 443, 455 (2004). By contrast, nonjurisdictional rules govern how courts and litigants operate within those bounds. Claim-processing rules, for example, "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson* v. *Shinseki*, 562 U. S. 428, 435 (2011).

"Harsh consequences attend the jurisdictional brand." *Fort Bend County* v. *Davis*, 587 U. S. ——, —— (2019) (alteration and internal quotation marks omitted). For example, because courts are not able to exceed limits on their adjudicative authority, they cannot grant equitable exceptions to jurisdictional rules. See *Boechler* v. *Commissioner*, 596 U. S. ——, —— (2022). Jurisdictional objections also can be raised at any time in the litigation. *Hamer* v. *Neighborhood Housing Servs. of Chicago*, 583 U. S. 17, —— – —— (2017). Moreover, and most relevant here, courts must enforce jurisdictional rules *sua sponte*, even in the face of a litigant's forfeiture or waiver. *Ibid.*

We treat a rule as jurisdictional "only if Congress 'clearly states' that it is." *Boechler*, 596 U. S., at —— (quoting *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 515 (2006)). And "[w]here multiple plausible interpretations exist—only one of which is jurisdictional—it is difficult to make the case that the jurisdictional reading is clear." 596 U. S., at ——. We adopted this clear-statement principle in *Arbaugh* "to leave the ball in Congress' court," ensuring that courts impose

harsh jurisdictional consequences only when Congress unmistakably has so instructed. 546 U. S., at 515–516; see *Wilkins* v. *United States*, 598 U. S. 152, 157–158 (2023).

B

Two aspects of § 1252(d)(1), taken together, persuade us that this statutory provision lacks the clear statement necessary to qualify as jurisdictional.

First, § 1252(d)(1) imposes an exhaustion requirement, which is a quintessential claim-processing rule. When faced with a type of statutory requirement that "ordinarily [is] not jurisdictional," we naturally expect the ordinary case, not an "exceptional one." *Sebelius* v. *Auburn Regional Medical Center*, 568 U. S. 145, 154–155 (2013); see also, *e. g.*, *United States* v. *Kwai Fun Wong*, 575 U. S. 402, 410 (2015). So it is here. We routinely "trea[t] as nonjurisdictional . . . threshold requirements that claimants must complete, or exhaust, before filing a lawsuit." *Reed Elsevier, Inc.* v. *Muchnick*, 559 U. S. 154, 166, and n. 6 (2010).[4] Indeed, we have yet to hold that any statutory exhaustion requirement is jurisdictional when applying the clear-statement rule that we adopted in *Arbaugh*.

Exhaustion is typically nonjurisdictional for good reason. Jurisdictional treatment of an exhaustion requirement could

---

[4] There are many examples. To name a few, we deemed exhaustion requirements nonjurisdictional in *Fort Bend County* v. *Davis*, 587 U. S. ___, ___ (2019) (Title VII, 42 U. S. C. §§ 2000e–5(e)(1), (f)(1)), *EPA* v. *EME Homer City Generation, L. P.*, 572 U. S. 489, 511–512 (2014) (Clean Air Act, 42 U. S. C. § 7607(d)(7)(B)), *Union Pacific R. Co.* v. *Locomotive Engineers*, 558 U. S. 67, 82 (2009) (Railway Labor Act, 45 U. S. C. § 152), and *Woodford* v. *Ngo*, 548 U. S. 81, 101 (2006) (Prison Litigation Reform Act, 42 U. S. C. § 1997e(a); see also *Jones* v. *Bock*, 549 U. S. 199, 211–217 (2007)). And we have repeatedly observed that exhaustion is usually nonjurisdictional. See, *e. g.*, *Patchak* v. *Zinke*, 583 U. S. ___, ___ (2018) (plurality opinion) (naming "an exhaustion requirement" as a typical claim-processing rule); *Jones*, 549 U. S., at 212 (exhaustion is "usual[ly]" regarded "as an affirmative defense").

undo the benefits of exhaustion. That is, exhaustion pro-
motes efficiency, including by encouraging parties to resolve
their disputes without litigation. See *Jones* v. *Bock*, 549
U. S. 199, 219 (2007); *McCarthy* v. *Madigan*, 503 U. S. 140,
145 (1992). But jurisdictional treatment can result in the
opposite: If exhaustion is jurisdictional, litigants must slog
through preliminary nonjudicial proceedings even when, for
example, no party demands it or a court finds it would be
pointless, wasteful, or too slow. Similarly, an exhaustion ob-
jection raised late in litigation (as jurisdictional objections
can be) might derail "many months of work on the part of
the attorneys and the court." *Henderson*, 562 U. S., at 434–
435 (jurisdictional rules risk "the waste of judicial resources
and may unfairly prejudice litigants"). Thus, jurisdictional
treatment could disserve the very interest in efficiency that
exhaustion ordinarily advances. See *Wilkins*, 598 U. S., at
158 ("Given th[e] risk of disruption and waste that accompan-
ies the jurisdictional label, courts will not lightly apply it
to procedures Congress enacted to keep things running
smoothly and efficiently").

It would therefore be aberrant for the exhaustion require-
ment in § 1252(d)(1) to be characterized as jurisdictional. Of
course, "Congress is free to attach" jurisdictional conse-
quences to a requirement that usually exists as a claim-
processing rule. *Henderson*, 562 U. S., at 435. But to be
confident Congress took that unexpected tack, we would
need unmistakable evidence, on par with express language
addressing the court's jurisdiction. Nothing close appears
here.

Instead, a second feature of the statute compounds our
doubt that § 1252(d)(1) qualifies as a jurisdictional rule: That
provision's language differs substantially from more clearly
jurisdictional language in related statutory provisions.
Elsewhere in the laws governing immigration cases, Con-
gress specified that "no court shall have jurisdiction" to re-

view certain matters.[5]   Over and over again, Congress used
that language in provisions that were enacted at the same
time—and even in the same section—as §1252(d)(1).[6]   But
Congress eschewed such plainly jurisdictional language in
§1252(d)(1).

The contrast between the text of §1252(d)(1) and the
"unambiguous jurisdictional terms" in related provisions
"show[s] that Congress would have spoken in clearer terms
if it intended" for §1252(d)(1) "to have similar jurisdictional
force."   *Gonzalez* v. *Thaler*, 565 U. S. 134, 143 (2012); accord,
*Henderson*, 562 U. S., at 438–439.   And, here, there is
good reason to infer that the linguistic contrast between
§1252(d)(1) and neighboring provisions is meaningful, not
haphazard: Unlike other provisions, §1252(d)(1) concerns ex-
haustion, and its language tracks exhaustion's usual nonju-
risdictional status.

Taken together, these two features of §1252(d)(1)—its con-
tent as an exhaustion requirement and its contrast with
related, plainly jurisdictional provisions—make interpreting
§1252(d)(1) as a claim-processing rule credible enough that
we cannot deem it clearly jurisdictional.   Thus, we conclude
that §1252(d)(1) is a nonjurisdictional rule " 'merely prescrib-
[ing] the method by which the jurisdiction granted the courts
by Congress is to be exercised.' "   *Kontrick*, 540 U. S., at
454 (quoting 12 C. Wright, A. Miller, & R. Marcus, Federal
Practice and Procedure §3141, p. 485 (2d ed. 1997)).

———————

[5] See, *e. g.*, 8 U. S. C. §§1252(a)(2)(A), (a)(2)(B), (a)(2)(C), (b)(9), (g),
1182(a)(9)(B)(v), (d)(3)(B)(i), (d)(12), (h), (i)(2), 1158(a)(3), 1227(a)(3)(C)(ii),
1229c(f), 1255a(f)(4)(C); see also §1225(b)(1)(D) ("the court shall not have
jurisdiction").

[6] See Illegal Immigration Reform and Immigrant Responsibility Act of
1996, 110 Stat. 3009–546, 3009–577, 3009–582, 3009–597, 3009–607, 3009–
612, 3009–638, 3009–639, 3009–649, 3009–691 (codified at §§1182(a)(9)(B)(v),
(d)(12), (h), (i)(2), 1158(a)(3), 1225(b)(1)(D), 1227(a)(3)(C)(ii), 1229c(f), 1252(a)
(2)(A), (a)(2)(B), (a)(2)(C), (g), 1255a(f)(4)(C)).

C

The Government offers several reasons why § 1252(d)(1) should nonetheless be characterized as jurisdictional. Given our clear-statement rule, none is persuasive.

First, the Government insists that § 1252(d)(1) is jurisdictional because it is addressed to the "court" and limits "review." But that language does not necessarily refer to the court's *jurisdiction*. Claim-processing rules can also be addressed to courts. After all, one purpose of such rules is to "instruct the court on the limits of its discretion" in handling claims. *Kontrick*, 540 U. S., at 456. Provisions limiting "review" can be directions about the mode or manner of review that are likewise nonjurisdictional in nature. Examples abound, including elsewhere in the same title and section as § 1252(d)(1). See, *e. g.*, § 1252(b)(2) ("The court of appeals shall review the proceeding on a typewritten record and on typewritten briefs"); § 1535(a)(3) ("The Court of Appeals shall . . . review questions of law de novo"); 5 U. S. C. § 706 ("[T]he court shall review the whole record or those parts of it cited by a party").

Moreover, when taking other aspects of the statute into account, it becomes apparent that § 1252(d)(1) is not using "court" and "review" in a jurisdictional manner. Section 1252(d)(1) is not even focused solely on the court. It also requires that "*the alien* has exhausted" certain remedies, § 1252(d)(1) (emphasis added), so it "speak[s] to a party's procedural obligations" as well, just like a nonjurisdictional claim-processing rule, *Fort Bend County*, 587 U. S., at —— (alteration and internal quotation marks omitted). In addition, as previously mentioned, Congress had expressly jurisdictional language close at hand. *Supra*, at 418–419. Its use of more ambiguous phrasing to impose a quintessential nonjurisdictional requirement is hardly the requisite clear statement that § 1252(d)(1) is jurisdictional.

Second, the Government seeks to advance a theory that is based on a prior version of § 1252(d)(1)'s exhaustion require-

ment. A statute that existed before § 1252(d)(1) provided that an "order of deportation . . . shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him." 8 U. S. C. § 1105a(c) (1958 ed., Supp. III). According to the Government, that predecessor provision was jurisdictional, and Congress merely carried forward that understanding in § 1252(d)(1). But at each step of that theory, we find doubt, not clarity.

To begin, the Government has not established that the predecessor provision was actually jurisdictional. Its text, standing alone, did not clearly govern the court's jurisdiction. So the Government turns to precedent. No precedent of this Court, however, established that the predecessor exhaustion provision was jurisdictional (in the sense that we now use the term).

The Government principally invokes *Stone* v. *INS*, 514 U. S. 386 (1995), and *Nken* v. *Holder*, 556 U. S. 418 (2009). Both cases described portions of the Immigration and Nationality Act that contained § 1252(d)(1)'s predecessor as "jurisdictional." *Stone*, 514 U. S., at 399, 405; *Nken*, 556 U. S., at 424. But "[j]urisdiction, the Court has observed, is a word of many, too many, meanings," and courts "have more than occasionally" used it to describe rules beyond those governing a court's adjudicatory authority. *Fort Bend County*, 587 U. S., at —— – ——, and n. 4 (internal quotation marks omitted).

Neither *Stone* nor *Nken* attends to the distinction between "jurisdictional" rules (as we understand them today) and nonjurisdictional but mandatory ones. Indeed, *Stone* predates our cases, starting principally with *Arbaugh* in 2006, that "bring some discipline to the use of th[e] term" "jurisdictional." *Henderson*, 562 U. S., at 435. *Nken* came later, but it never addressed the *Arbaugh* line of cases. And in both *Stone* and *Nken*, whether the provisions were jurisdictional "was not central to the case." *Reed Elsevier*, 559 U. S., at 161. On top of all that, neither case addressed the

exhaustion requirement specifically. Instead, both merely mentioned the section of the Immigration and Nationality Act that housed the exhaustion requirement. *Stone*, 514 U. S., at 399, 405; *Nken*, 556 U. S., at 424. *Stone* and *Nken* therefore cannot be read to establish the predecessor exhaustion requirement as jurisdictional.

The Government also points to pre-*Arbaugh* decisions by lower courts characterizing the predecessor exhaustion provision as jurisdictional. Brief for Respondent 21, n. 6 (collecting cases). We have held, however, that pre-*Arbaugh* lower court cases interpreting a related provision are not enough to make clear that a rule is jurisdictional. *MOAC Mall Holdings LLC* v. *Transform Holdco LLC*, 598 U. S. ——, —— (2023); *Wilkins*, 598 U. S., at 165; *Boechler*, 596 U. S., at ——; *Reed Elsevier*, 559 U. S., at 167–169.

Further weakening the Government's reliance on the claimed jurisdictional status of § 1252(d)(1)'s predecessor is the fact that when it enacted § 1252(d)(1), Congress did not even recodify that prior provision exactly. Instead, Congress altered the formulation that, according to the Government, had been understood as a jurisdictional rule. Compare 8 U. S. C. § 1105a(c) (1958 ed., Supp. III) (a deportation order "shall not be reviewed by any court if") with 8 U. S. C. § 1252(d)(1) (1994 ed., Supp. II) ("[a] court may review a final order of removal only if"). And having gone to the trouble of rewriting the provision, Congress *still* chose not to use the more expressly jurisdictional formulation that it utilized elsewhere. *Supra*, at 418–419. All of this is inconsistent with the Government's theory that Congress understood the predecessor provision to be jurisdictional and carried that forward in § 1252(d)(1).

Finally, the Government suggests that § 1252(d)(1) is jurisdictional simply because it falls within § 1252. Section 1252 is the exclusive source of jurisdiction for immigration cases like this one, the Government contends, so each of § 1252's

limits must be jurisdictional.   Brief for Respondent 17–18.[7]
This logical leap falls short.   Any foreclosure of sources of
jurisdiction *outside* § 1252 does not tell us which provisions
*within* § 1252 are essential jurisdictional prerequisites.   And
even if some provisions in a statutory section qualify as ju-
risdictional, that does not suffice to establish that all others
are.   *Sebelius*, 568 U. S., at 155; *Gonzalez*, 565 U. S., at
146–147.   This argument, like the Government's others, fails
to demonstrate that it is "clea[r]" that Congress made
§ 1252(d)(1)'s exhaustion requirement jurisdictional.   *Ar-
baugh*, 546 U. S., at 515.

*          *          *

Because § 1252(d)(1)'s exhaustion requirement is not juris-
dictional, it is subject to waiver and forfeiture.   See *Nutra-
ceutical Corp.* v. *Lambert*, 586 U. S. ——, —— – —— (2019).
The Court of Appeals erred in holding otherwise.

## III

The Government now suggests that even if § 1252(d)(1) is
not jurisdictional, the Court of Appeals' *sua sponte* require-
ment that Santos-Zacaria comply with § 1252(d)(1) can be jus-
tified on alternative grounds.   Brief for Respondent 26, n. 7.
We do not reach that issue.   Instead, we hold that, even
if § 1252(d)(1) were applied here, Santos-Zacaria has done
enough to satisfy it.   That is, § 1252(d)(1) does not require
that Santos-Zacaria seek reconsideration from the Board, as
the Court of Appeals believed.

---

[7] For the proposition that § 1252 is the exclusive source of jurisdiction,
the Government relies on two provisions.   Section 1252(a)(5) states that
"a petition for review filed . . . in accordance with this section shall be the
sole and exclusive means for judicial review of" certain removal orders.
Section 1252(b)(9) states that "[j]udicial review of all questions of law and
fact . . . arising from" removal proceedings "shall be available only in
judicial review of a final order under this section," and, with certain excep-
tions, "no court shall have jurisdiction" under other provisions.

A

Under the plain language of § 1252(d)(1), a noncitizen must "exhaus[t] all administrative remedies available to the alien as of right." The parties here dispute whether, to fulfill this requirement, Santos-Zacaria had to seek a certain form of review of her legal claim: reconsideration by the Board of Immigration Appeals. Whether exhaustion for § 1252(d)(1) purposes requires seeking Board reconsideration turns on the meaning of "remedies available . . . as of right," which, in turn, relates to the specifics of the Board's reconsideration process.

Pursuant to that process, after the Board renders a final decision, it can provide additional review via reconsideration and its close cousin, reopening. Reconsideration addresses "errors of law or fact in the previous order," while reopening accounts for "new facts." §§ 1229a(c)(6)–(7); see 8 CFR § 1003.2 (2022).[8]

Meanwhile, it is well established that a remedy is not available "as of right" if it is discretionary. "As of right" is a familiar phrase in the law, meaning "[b]y virtue of a legal entitlement." Black's Law Dictionary 141 (11th ed. 2019). And in the context relevant here—review of a legal claim— the phrase means review that is guaranteed, not contingent on permission or discretion. An "appeal as of right" is one over which the court "has no discretion to deny review." *Id.*, at 121. By contrast, "discretionary review" is review "that is not a matter of right" and instead requires "permission." *Id.*, at 1579. Under the Federal Rules, for instance, an appeal "as of right," Fed. Rule App. Proc. 3, stands in contrast to an appeal "within the [court's] discretion," Fed. Rule App. Proc. 5. To take another example, this Court's certiorari review is "not a matter of right, but of

---

[8] Reconsideration and reopening are related forms of relief, and the parties' arguments about § 1252(d)(1) address both. But reconsideration is the pertinent one here because Santos-Zacaria alleges the Board committed an error of law.

judicial discretion." Supreme Court Rule 10. Thus, because § 1252(d)(1) requires exhausting only remedies available "as of right," it does not require exhausting discretionary review.

Board reconsideration and reopening are discretionary. By regulation, today and at the time of § 1252(d)(1)'s enactment, "[t]he decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board." 8 CFR § 1003.2(a) (2022); 8 CFR § 3.2 (1996); 61 Fed. Reg. 18904 (1996); see *Dada* v. *Mukasey*, 554 U. S. 1, 12–13 (2008) (tracing history of discretion to reopen back to 1916). That means a noncitizen can *request* reconsideration. But only if "the motion to reconsider is granted" does the Board proceed to make the "decision upon such reconsideration" as to whether to "affirm, modify, or reverse the original decision." 8 CFR § 1003.2(i). And, again, whether to grant the motion to reconsider, and thus proceed to such review, is up to the Board in its discretion. § 1003.2(a); *In re O-S-G-*, 24 I. & N. Dec. 56, 57 (BIA 2006) ("[W]e have authority to deny a motion to reconsider as a matter of discretion"); cf. § 1003.2(a) ("The Board has discretion to deny a motion to reopen even if the party moving has made out a *prima facie* case for relief").

Because Board reconsideration (like reopening) is a discretionary form of review, it is not available to the noncitizen "as of right." Section 1252(d)(1) therefore does not require a noncitizen to pursue it.

B

The Government acknowledges that because § 1252(d)(1) requires only exhaustion of remedies "available . . . as of right," "a noncitizen need not exhaust 'discretionary' remedies." Brief for Respondent 39. It also acknowledges that Board reconsideration is discretionary. *Id.*, at 41, n. 11; Brief in Opposition 15–16. Still, the Government tries to squeeze reconsideration into the statutory requirement of remedies available "as of right." We are unpersuaded.

According to the Government, § 1252(d)(1) requires seeking reconsideration because a noncitizen has the "right" *to file a motion* to reconsider. But that is a peculiar understanding of a remedy available "as of right." The Government identifies no other provision that uses "as of right" to describe the right to file a motion that appeals to the decisionmaker's discretion. Tr. of Oral Arg. 35. A discretionary appeal, for example, is not "as of right" just because a litigant has a right to file a petition for permission to appeal. See, *e. g.*, 28 U. S. C. § 1292(b); Fed. Rule Civ. Proc. 23(f).

That understanding of "as of right" is so unnatural that even the Government does not fully embrace it, as its view of other forms of relief reveals. Cancellation of removal, voluntary departure, and adjustment of status are discretionary types of immigration relief available to noncitizens only as a matter of grace, not entitlement. 8 U. S. C. §§ 1229b, 1229c, 1255; see *Kucana* v. *Holder*, 558 U. S. 233, 247–248 (2010). And the Government accordingly volunteers them as examples of remedies "not 'available' to [a noncitizen] 'as of right.'" Brief for Respondent 39 (quoting § 1252(d)(1)). Yet eligible noncitizens can file requests for those forms of relief. See §§ 1229b, 1229c, 1255; 8 CFR §§ 1240.20, 1240.26, 1245.1. Even the Government does not say these are remedies available "as of right" just because noncitizens have a right to request them.

The Government's reading has a further flaw. Understanding the *motion* for reconsideration as a remedy "available . . . as of right" does not just read "as of right" unnaturally; it reads it out of § 1252(d)(1) altogether. Under the Government's view, there is a remedy that is "available . . . as of right" here because the noncitizen is entitled to request reconsideration by filing a motion. See Brief for Respondent 38–39. But if a noncitizen could *not* request reconsideration, there would be no remedy "available" for the noncitizen to exhaust. The statute's additional requirement that

the remedy be available "as of right" would be entirely superfluous. Instead, we read the phrase "as of right" to do its usual work in the context of review of a legal claim: distinguishing between discretionary and nondiscretionary review.

Switching gears, the Government suggests that § 1252(d)(1) excludes only remedies made discretionary *by statute*, while reconsideration and reopening are made discretionary *by regulation*. *Id.*, at 39–40. True, Congress elsewhere focused on discretion specified by statute. We considered such a provision in *Kucana* v. *Holder*, addressing administrative actions " 'the authority for which is *specified under this subchapter* to be in the discretion of the Attorney General.' " 558 U. S., at 237 (quoting § 1252(a)(2)(B)(ii)). But § 1252(d)(1) draws no such line. It simply covers remedies that are "available . . . as of right." Whether that characteristic is established by statute or regulation makes no difference.

It is especially implausible that § 1252(d)(1) treats reconsideration and reopening as "available . . . as of right" just because the discretion whether to grant them is not specified by statute. As we noted previously, when Congress enacted § 1252(d)(1), regulation and historical practice had already firmly established Board reconsideration and reopening as discretionary. *Supra*, at 425; 8 CFR § 3.2 (1996); *Dada*, 554 U. S., at 12–13. We have no reason to think § 1252(d)(1) categorizes those well-understood discretionary forms of review as "available . . . as of right."

The Government also posits that reconsideration and reopening are "available . . . as of right" because in certain cases, denying the noncitizen's motion would be reversible as an abuse of discretion. See Brief for Respondent 41, n. 11; Tr. of Oral Arg. 39. All this shows is that the agency's discretion has limits. That is no surprise. "Traditionally, . . . decisions on matters of discretion are reviewable for abuse of discretion." *Highmark Inc.* v. *Allcare Health Management*

*System, Inc.*, 572 U. S. 559, 563 (2014) (internal quotation marks omitted). They remain "matters of discretion" all the same.

Finally, not only do the Government's theories fail on their own terms, but they also share a common problem: They would render the statutory scheme incoherent. The Government urges that reconsideration (or at least a motion to reconsider) is an "administrative remed[y] available . . . as of right," § 1252(d)(1). Yet § 1252(d)(1) requires "exhaus[ting] all" such remedies, without exception. So if the Government is correct, noncitizens would need to seek reconsideration from the Board before obtaining judicial review in every case. But that obligation is incompatible with the rest of the statute's design.

In particular, elsewhere, the statute provides for a process that does *not* require reconsideration before judicial review. Noncitizens are authorized to seek judicial review of an agency order and, additionally, to seek administrative review of the agency's decision via a "motion to reopen or reconsider the order." See § 1252(b)(6). The statute gives noncitizens *the same 30-day window* from the agency order to seek judicial review and administrative reconsideration. §§ 1252(b)(1), 1229a(c)(6)(B). The statute is thus designed around pursuing judicial review and agency reconsideration *in parallel*, not waiting to seek judicial review until after reconsideration is complete. With respect to a prior version of this scheme, we observed that, if a noncitizen seeks reconsideration, the statute plainly "contemplates" that "two separate petitions for [judicial] review will exist in the normal course": one from the agency's initial order and a later one from its decision on the reconsideration motion. *Stone*, 514 U. S., at 393–395.

If reconsideration were required for exhaustion, however, only *one* petition—the later one—would pass muster. The first petition would be premature. So the Government's interpretation of remedies "available . . . as of right" would

not just flood the Board with reconsideration motions that noncitizens otherwise would not file; it would also flood the courts with pointless premature petitions—petitions that the statutory scheme would provide for noncitizens to file, on the one hand, yet deem unexhausted, on the other. We decline to interpret the statute to be so at war with itself.

C

Conceding that it "would be inconsistent with" the design of the statute to require noncitizens to *always* file a motion to reconsider for exhaustion purposes, the Government instead would require such a motion only *sometimes*: when the noncitizen is raising an issue not previously presented to the agency. Brief for Respondent 36–37. According to the Government, a noncitizen must give the agency an opportunity to consider an issue before raising it in court. So in the Government's view, a motion to reconsider is required when it is the only remaining mechanism for presenting a new issue, but not when the noncitizen has already presented every issue to the agency in other ways.[9]

That is not the scheme Congress adopted. Section 1252(d)(1) does not require noncitizens to give the agency an opportunity to consider an objection *using every mechanism available*. It requires exhausting only administrative remedies "available . . . as of right." And we do not see how seeking reconsideration can qualify sometimes and not others. Instead, for the reasons already explained, it does not qualify at all. *Supra*, at 424–429.

Nor would the Government's approach cure the inconsistency identified above: The statutory scheme would still produce pointless, unexhausted petitions for review. See

_____

[9] Here, for example, Santos-Zacaria objects that the Board conducted impermissible factfinding. Because that issue arose in the Board's decision, the Government says, Santos-Zacaria had not previously raised her objection to the Board but she could have done so in a motion to reconsider. In the Government's view, she needed to take that option.

*supra*, at 428–429.  Consider, for example, a noncitizen whose only issue for judicial review is one she had not raised previously because the Board's decision introduced the issue. Under the Government's view, § 1252(d)(1) bars judicial review until after she pursues reconsideration.  Yet, elsewhere, the statutory scheme contemplates that she immediately petition for judicial review of the Board's initial, preconsideration decision.  See *ibid.*; §§ 1252(b)(1), (6), 1229a(c)(6)(B).  Any such petition is a worthless exercise, however, if it is unexhausted by definition, as the Government maintains.

The Government's approach would also introduce practical difficulties.  If motions to reconsider are required only sometimes, what cases qualify?  In this very case, the members of the Court of Appeals panel disagreed about whether a motion to reconsider was required under the Government's rule, largely because they differed over whether Santos-Zacaria had asserted adequately to the Board earlier that new factfinding would be impermissible.  Compare 22 F. 4th, at 573 (majority opinion), with *id.*, at 575 (Higginson, J., dissenting).  And how are noncitizens—already navigating a complex bureaucracy, often *pro se* and in a foreign language—to tell the difference?  The Government's position presents a world of administrability headaches for courts, traps for unwary noncitizens, and mountains of reconsideration requests for the Board (filed out of an abundance of caution by noncitizens unsure of the need to seek reconsideration).  For the reasons discussed, we are confident that Congress did not adopt such a scheme.[10]

————————

[10] Under our holding, § 1252(d)(1) does not require a noncitizen to seek discretionary Board review to raise issues that she had not raised to the Board before.  To that limited extent, we reject the Government's contention that Congress "preclud[ed] the courts from considering any issue that had not been presented to the Board in the first instance," Brief for Respondent 31.  But beyond that, we do not address more generally what

Alito, J., concurring in judgment

\*      \*      \*

Section 1252(d)(1)'s exhaustion requirement is not jurisdictional and does not oblige a noncitizen to seek discretionary review, like reconsideration before the Board of Immigration Appeals. We vacate the portion of the judgment of the Court of Appeals dismissing Santos-Zacaria's petition for review and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE ALITO, with whom JUSTICE THOMAS joins, concurring in judgment.

I agree with the Court that 8 U. S. C. § 1252(d)(1) does not require the filing of a motion for reconsideration under the circumstances presented here. That provision requires the exhaustion of those administrative remedies that are "available to [an] alien as of right," but the decision to grant reconsideration is discretionary. 8 CFR § 1003.2(a) (2022). Because that determination disposes of this case, I would not decide whether § 1252(d)(1) is jurisdictional with respect to the administrative remedies to which it does apply.

---

obligations noncitizens have to present specific issues when appearing before the agency.

Reporter's Note

The attached opinion has been revised to reflect the usual publication
and citation style of the United States Reports.  The revised pagination
makes available the official United States Reports citation in advance of
publication.   The syllabus has been prepared by the Reporter of Decisions
for the convenience of the reader and constitutes no part of the opinion of
the Court.   A list of counsel who argued or filed briefs in this case, and
who were members of the bar of this Court at the time this case was
argued, has been inserted following the syllabus.   Other revisions may
include adjustments to formatting, captions, citation form, and any errant
punctuation.   The following additional edits were made:

None