FILED
United States Court of Appeals
Tenth Circuit

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**March 12, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

KARAM SINGH,

    Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,

    Respondent.

No. 23-9573
(Petition for Review)

_____

## ORDER AND JUDGMENT[*]
_____

Before **PHILLIPS**, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

Petitioner Karam Singh, appearing pro se, petitions for review of a decision by

the Board of Immigration Appeals (BIA) affirming, without opinion, a decision of an

Immigration Judge (IJ) denying his applications for asylum, withholding of removal,

and protection under the Convention Against Torture (CAT).  Exercising jurisdiction

pursuant to 8 U.S.C. § 1252(a), we deny Singh's petition for review.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

Singh was born in the Indian state of Punjab on March 20, 1983.  He is both a native and citizen of India.  Singh is married and has two children.  Singh and his family lived with Singh's parents in Punjab and Singh was employed as a farmer.

In December 2016, Singh became a member of the Shiromani Akali Dal Amritsar Mann political party, which is commonly referred to as the Mann party.  According to Singh, he was a low-level worker for the Mann party who assisted in hanging posters and setting up and tearing down for weddings of poor girls.

Singh alleges that he was assaulted on two separate occasions as a result of his membership in the Mann party.  The first such assault allegedly occurred in January 2017.  Singh alleges that he had been putting up posters when four people from the opposing Congress party pulled up in a vehicle and began verbally harassing him.  The four people then allegedly proceeded to physically assault Singh by slapping, kicking, and hitting him with a stick.  Singh alleges that the assault lasted approximately thirty to sixty seconds, but was not overly aggressive and caused him, at most, only minor injuries.  According to Singh, the assault was meant to warn him to leave the Mann party and join the Congress party.  Singh did not report the assault to the police.

The second assault allegedly occurred in September 2017 when Singh was returning from a Sikh temple.  Singh alleges that four individuals from the Congress party surrounded and then assaulted him.  Singh did not recognize the four individuals and was unsure if they were the same individuals who assaulted him in

January 2017. But, according to Singh, the individuals stated that they had already warned him the first time to leave the Mann party and that, since he failed to do so, they were going to kill him. The four individuals allegedly started by slapping Singh and knocking him to the ground. Three of the individuals then allegedly began kicking him, while the fourth individual went to a car, grabbed a hockey stick, and allegedly began to hit Singh with the stick. Singh alleges that at some point a group of passersby came to his aid and forced the assailants to leave. Singh alleges that, after the assault, he drove his motorcycle to a local clinic, where he obtained unidentified pain medications and some healing ointment for abrasions and bruises sustained during the assault. Singh alleges that he also went to the police, but they made him wait all day and ultimately told him that he should forget about the incident or that they would file false charges against him.

Singh stayed in India for approximately two months after the September 2017 assault. Singh claims to have hid during that time at a temple and with friends, and he did not receive any additional threats or harm from any members of the Congress party or anyone else.

Singh was not aware of any other Mann party members who had been harmed or killed. Further, Singh was unclear why he, as a new, low-level member of the Mann party would be targeted by members of the Congress party.

II

Singh entered the United States on March 19, 2018, and was arrested by ICE officials in California.  He did not possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document.

On April 17, 2018, removal proceedings were initiated against Singh.  Singh had his initial appearance before an IJ in Denver, Colorado, on May 3, 2018.  On May 18, 2018, Singh posted a $20,000 bond and was released from ICE custody. Singh appeared with counsel before an IJ again on August 14, 2018, conceded removability, and sought relief in the form of asylum, withholding of removal, and withholding under the CAT.

On July 17, 2019, Singh appeared again with counsel before an IJ for a removal proceeding.  Singh testified under oath through an interpreter.  After hearing Singh's testimony, the IJ issued an oral ruling.  The IJ began by "find[ing] that removability ha[d] been sustained by clear and convincing evidence."  R., Vol. 2 at 47.  As for Singh's application for relief, the IJ concluded that there was not "enough information" in the record "in order to find [Singh's] testimony sufficiently credible and to find that these [alleged assaults] actually occurred."  *Id*. at 161.  The IJ explained that there were some minor inconsistencies between the descriptions of the assaults that Singh provided prior to the removal proceeding and the descriptions he testified to at the removal proceeding.  The IJ further explained that he "struggle[d] with the plausibility of [Singh's] account" of the assaults, "as [Singh] gave no rational reason why, of all the Mann party people that he knows, that the Congress

4

party members would choose him to assault and threaten, as he was merely a new, low-level party worker who hung posters and assisted at weddings." *Id*. at 50–51. The IJ "also f[ound] it hard to believe that being beaten by four men with one or more hockey sticks," as Singh alleged occurred during the second assault, "would (1) not have required a hospital stay, (2) would have not resulted in any broken bones or internal injuries, and (3) this as stated would not have resulted in any injury other than minor scrapes and cuts, if these Congress party members truly wished to kill" Singh. *Id*. at 51. Moreover, the IJ stated that "the weakness of [Singh's] claim [wa]s exhibited in the complete lack of corroborating evidence as required by the REAL ID Act." *Id*. The IJ noted in particular that Singh "submitted no letters from his parents, his wife, other family members, his friends, any of the passersby who supposedly rescued him, or his superior or fellow party workers." *Id*. The IJ also noted that Singh, "[w]hen pressed" by the IJ "for why [he] submitted no documentation, . . . was generally evasive, not answering the questions and saying that he didn't know what these people could write or attest to." *Id*. Ultimately, the IJ stated:

> With a complete lack of corroborating evidence, the court cannot find [Singh] sufficiently credible to grant his claim, nor can this court understand why Congress party members would focus on him, a newly recruited low-level worker when, according to him, he has no personal knowledge that any of his fellow members were being attacked, and there is insufficient evidence to corroborate his claim that any member of the national government or even the Punjab state government, cares about [Singh's] party membership in such a way that would carry on until today.

*Id*. at 73–74.

With respect to Singh's asylum claim, the IJ concluded that "because [Singh] did not meet his burden to establish he suffered past persecution, the court [could not] presume that he has a well-founded fear of future persecution." *Id*. at 76. The IJ further concluded that there was no evidence in the record that would allow him to find there was "a reasonable possibility that [Singh] w[ould] be harmed in the way that he fear[ed] if he were to return to Punjab." *Id*. at 77. The IJ also concluded that Singh failed to "demonstrate[] that he could not relocate to another part of India." *Id*. at 78. Lastly, the IJ concluded that Singh failed to "show that there [wa]s a pattern or practice of persecution of others similarly situated" to him in India, "and that [he] is included in, or identified with, the persecuted group." *Id*.

As for Singh's application for withholding of removal, the IJ noted that "[t]he standard [for] withholding of removal is higher than asylum." *Id*. at 79. "As a result," the IJ "f[ound] th[at] [Singh] ha[d] failed to meet his burden of proof for withholding of removal under the Act." *Id*.

Lastly, the IJ concluded that Singh "ha[d] not established eligibility for relief under the [CAT]." *Id*. at 79. The IJ explained:

> The respondent testified that he was harmed by four Congress party members, although he was unable to establish the level in which those members belonged. Therefore, even though the court does not find that the respondent has demonstrated he was ever harmed in any manner in India, let alone by government officials, the respondent has not demonstrated, even if it were to buy his account of his past harm, that it was ever at the hands of government or police officials in India. He has not demonstrated that it is more likely than not that he would be tortured in the future in India with the consent or acquiescence of the government, or by the government, based on those same reasons that the court cited in the asylum analysis.

6

*Id.*

In sum, the IJ denied Singh's applications for asylum, withholding of removal, and protection under the CAT, and ordered him removed from the United States to India.

Singh filed a timely notice of appeal from the IJ's decision. The BIA, after receiving briefing from the parties, issued an unpublished decision on July 20, 2023, affirming, without opinion, the IJ's decision.

On August 7, 2023, Singh filed a petition for review with this court. He has since filed an appellate brief and the government has likewise filed an appellate response brief.

### III

Because the BIA affirmed, without opinion, the IJ's decision, that effectively made the IJ's decision the final agency determination. *See* 8 C.F.R. § 1003.1(e)(4). We therefore review the IJ's decision in this appeal. *See Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010) ("When a single member of the BIA issues a brief order affirming an IJ's decision, this court reviews both the decision of the BIA and any parts of the IJ's decision relied on by the BIA in reaching its decision."). In doing so, we review the agency's legal determinations de novo and its factual findings for substantial evidence. *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013). "[A]dministrative findings of fact are conclusive unless any reasonable

7

adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

*A) The IJ's determination that Singh was not credible*

In his first issue on appeal, Singh argues that the IJ erred in determining that his testimony at the evidentiary hearing was not credible. For the reasons that follow, we reject Singh's argument.

"Credibility determinations are factual findings subject to the substantial evidence test." *Sarr v. Gonzalez*, 474 F.3d 783, 789 (10th Cir. 2007) (ellipsis and internal quotation marks omitted). "We do not" independently "evaluate witnesses' credibility." *Id*. (ellipsis and internal quotation marks omitted).

As the IJ noted in his oral ruling, Singh's pre-hearing accounts of the two assaults were "somewhat consistent," but included "few details" of the assaults. R., Vol. 2 at 50. At the evidentiary hearing, Singh testified for the first time that, during the course of the first assault, "he was struck with a stick of some kind." *Id*. Further, although Singh's pretrial accounts of the second assault referred to the use of multiple hockey sticks, he testified at the evidentiary hearing that "he was only hit with one hockey stick" during the second assault. *Id*.

In addition to these inconsistencies, the IJ "struggle[d] with the plausibility of [Singh's] account" for two other reasons. *Id*. First, Singh "gave no rational reason why, of all the Mann party people that he knows, that the Congress party members would choose him to assault and threaten." *Id*. at 50–51. Second, Singh, by his own admission, suffered only minor injuries during each of the two assaults, despite the

8

fact that, on both occasions, he was allegedly beaten by four men and that, during the second assault, the four men allegedly wished to kill him.

Finally, as the IJ emphasized in his oral ruling, there was a "complete lack of corroborating evidence" to support Singh's testimony about the two assaults. *Id*. at 51. For example, Singh "submitted no letters from his parents," with whom he and his family lived, or "his wife, other family members, his friends, any of the passersby who supposedly rescued him" from the second assault, "or his superior or fellow party workers." *Id*. Likewise, Singh submitted "no report or medical documents from the village physician who purportedly assisted" Singh after the second assault. Id. Although Singh "claimed that the local medical store that dispensed" medication to him "did not have sophisticated records," he offered no explanation as to "why the doctor could not write a letter to support him." *Id*. Further, Singh "did not submit any photographs demonstrating any of the purported injuries that he suffered." *Id*. And the IJ found that Singh, "[w]hen pressed for why [he] submitted no documentation, . . . was generally evasive, not answering questions and saying that he didn't know what these people could write or attest to." *Id*.

In his appeal, Singh concedes that he submitted no corroborating evidence, but argues that he nevertheless met his evidentiary burden through his testimony alone. As to his testimony and the IJ's criticisms of it, Singh argues that the IJ failed to give him an opportunity to explain the discrepancies between his testimony and his pre-hearing accounts of the assaults. Notably, however, Singh fails to offer an explanation in his opening brief for those discrepancies. At best, Singh argues that

9

the discrepancies were "trivial" and "insufficient to support an adverse credibility finding." Aplt. Br. at 5. Finally, as to the IJ's concerns about the plausibility of Singh's accounts of the two alleged attacks, Singh argues that "the IJ's position or expectation that" he should "provide an explanation as to why he was singled out . . . and attacked . . . has no basis in law." *Id*. at 6. But even if Singh were correct on that point, he fails to address at all the IJ's other stated concern regarding the plausibility of Singh's accounts, i.e., the fact that Singh sustained no serious injuries during either attack, despite the alleged severity of the two attacks.

In the end, we conclude after reviewing the transcript of the evidentiary hearing that no reasonable adjudicator would be compelled to find that Singh offered credible testimony.

### B) The IJ's findings that Singh did not suffer from past persecution or have a well-founded fear of future persecution

In his second and third issues on appeal, Singh challenges the IJ's findings that he did not suffer from past persecution or have a well-founded fear of future persecution. With respect to the question of past persecution, Singh argues that "[b]ased on the facts of this case, where [he] was twice beaten and threatened with death, [and] with the specific aim of forcing [him] to stop his work for his Mann party, the harm suffered by [him] meets the definition of persecution." Aplt. Br. at 8. Singh further argues that the death threats alone were sufficient to constitute past persecution. As for whether he has a well-founded fear of future persecution, Singh argues that he "stated his subjective fear of returning to India, and irrefutably proved

10

that his fear is objectively reasonable." *Id*. at 10.  Specifically, he argues that "his credible testimony showed that members of the Congress party took an interest in him and the Punjab police refused to provide any protection to [him] against his attackers." *Id*.

Singh's applications for asylum and withholding of removal both hinge, in pertinent part, on a showing of persecution.  To qualify for asylum, an applicant must be a refugee who is "unable or unwilling to return" to the applicant's country of nationality or habitual residence "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42).  "To be eligible for withholding of removal, an applicant must demonstrate that there is a clear probability of persecution because of his race, religion, nationality, membership in a particular social group, or political opinion."  *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012) (internal quotation marks and citation omitted).  "The showing required for withholding of removal is more stringent than the showing required for asylum."  *Id*.

Persecution, we have held, "'is the infliction of suffering or harm upon those who differ . . . in a way regarded as offensive and requires more than just restrictions or threats to life and liberty.'"  *Id.* at 1231 (quoting *Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005)).  "Mere 'denigration, harassment, and threats' are insufficient."  *Id.* (quoting *Tulengkey v. Gonzalez*, 425 F.3d 1277, 1280 (10th Cir. 2005)).  "To determine whether a petitioner has demonstrated persecution, the BIA

11

must examine harmful incidents in the aggregate." *Id.* (internal quotation marks and citation omitted).

The IJ's finding in this case that Singh did not suffer past persecution, even if we were to assume the truth of Singh's testimony, "is consistent with our case law." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1124 (10th Cir. 2007), abrogated on other grounds by *Santos-Zacaria v. Garland*, 598 U.S. 411 (2023). We have generally rejected claims of past persecution in the absence of "severe beatings" or "allegations of imprisonment." *Id.* (collecting cases). As a result, cases involving isolated acts of relatively minor physical harm, even on multiple occasions, have not risen to the level of past persecution. *Id.* Further, even a situation involving minor detentions and forced conscription into the army has not been held to be sufficiently severe to involve past persecution. *Kapcia v. INS*, 944 F.2d 702, 704–05 (10th Cir. 1991).

We likewise uphold the IJ's finding that Singh did not have a well-founded fear of future persecution. As the IJ noted, Singh did not submit "any evidence to indicate that the Congress party continues to look for him," and there is essentially no evidence in the record that could reasonably lead to a conclusion that members of the Congress party "would continue to look for him" since "he is nothing more than a newly-minted, low-level worker" for the Mann party. R., Vol. 2 at 55. Further, Singh admitted at the evidentiary hearing that he knew of no other Mann party members who had been harmed or killed. In addition, the government presented evidence that Mann party members have recently been elected to the legislature, indicating, as the IJ noted, "that the Mann party has sufficient political clout amongst

the populace that they are able to be elected to the Punjab legislature." *Id*. at 55–56. Lastly, Singh "did not submit any evidence regarding Congress party government officials or other high-level Congress party members assaulting, harming, or killing" newly elected members of the Mann party "or other higher officials of the Mann party who may run for office or act as directors for their districts."[1] *Id*. at 56.

### C) The IJ's denial of Singh's application for withholding of removal

In his fifth issue on appeal, Singh argues that the IJ erred in denying his application for withholding of removal. Singh argues in support that "since [he] has shown that the IJ erred in making an adverse credibility finding and therefrom, denying his asylum claim, [his] case meets the higher standard under withholding." Aplt. Br. at 12.

We reject Singh's arguments. As we have already concluded, the IJ did not err in finding that Singh's testimony about the two assaults was not credible, or in turn finding that Singh failed to establish past persecution or a well-founded fear of future persecution. Consequently, the IJ likewise did not err in denying Singh's application for withholding of removal, which, as we have noted, hinges in pertinent part on the existence of a clear probability of persecution because of race, religion, nationality, membership in a particular social group, or political opinion.

---

[1] Because there is no evidence in the record to support Singh's assertion that he has a well-founded fear of future persecution if he returns to Punjab, we conclude it is unnecessary to address Singh's challenge to the IJ's finding that Singh could reasonably relocate to another part of India.

13

*D) The IJ's denial of Singh's application for protection under the CAT*

In his sixth and final issue on appeal, Singh argues that the IJ erred in denying his application for protection under the CAT. According to Singh, he "testified credibly that he was tortured and therefore has [a] fear of returning to India." Aplt. Br. at 13. Singh complains that "the IJ merely concluded that [Singh] did not meet his burden of proving that he was ever harmed in India, let alone at the hands of the government or police officials in India." *Id*. Singh argues that "the IJ erred in refusing to take these facts into account, and in denying [his] claim on the basis that it [wa]s based on incredible testimony." *Id*. at 13–14.

A noncitizen who is ineligible for withholding of removal may still be eligible for deferral of removal under the CAT. 8 C.F.R. §§ 1208.16(c)(4), 1208.17(a). To establish eligibility for deferral, an alien must prove "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Id.* § 1208.16(c)(2). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person." *Id.* § 1208.18(a)(1). In assessing the likelihood of torture, the factfinder must consider "all evidence relevant to the possibility of future torture . . . including, but not limited to . . . [e]vidence of past torture inflicted upon the applicant"; the applicant's ability to "relocate to a part of the country of removal where he or she is not likely to be tortured"; "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal"; and "[o]ther relevant information regarding conditions in the country of removal." *Id.* § 1208.16(c)(3)(i)-(iv).

14

Additionally, for torture to warrant deferral of removal under the CAT, it must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person action in an official capacity." *Id.* § 1208.18(a)(1). "This standard does not require actual knowledge or willful acceptance by the government. Rather, willful blindness suffices to prove acquiescence." *Karki v. Holder*, 715 F.3d 792, 806 (10th Cir. 2013) (citation and internal quotation marks omitted). That said, evidence of law enforcement's inability to prevent torture does not compel a finding of acquiescence. *See, e.g., Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (petitioner failed to show acquiescence where the record showed the government had made efforts to prevent potential torture); *see also Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (evidence of government corruption did not compel a conclusion of government acquiescence).

In this case, the IJ found that Singh failed to "demonstrate[] that he was ever harmed in any manner in India, let alone by government officials." R., Vol. 2 at 58. The IJ further found that even if Singh's "account of his past harm" was credible, he failed to demonstrate "that it was ever at the hands of government or police officials in India." *Id*. The IJ therefore found that Singh failed to "demonstrate[] that it [wa]s more likely than not that he would be tortured in the future in India with the consent or acquiescence of the government, or by the government." *Id*.

Having already concluded that the IJ did not err in his credibility assessment of Singh's testimony, we affirm the IJ's rejection of Singh's application for

protection under the CAT on that basis.  In other words, having found that Singh's testimony about the two assaults lacked credibility, there was no evidence in the record from which the IJ could reasonably have found that it was more likely than not that Singh would be subject to torture if removed to India.  We likewise conclude that the IJ did not err in finding that, even if the alleged attacks did occur, Singh failed to demonstrate that there was any government involvement or acquiescence in them. We therefore conclude that the IJ did not err in denying Singh relief under the CAT.

IV

The petition for review is DENIED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge