**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**March 31, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

RAFAEL JOSE PEREZ-MAVAREZ;
ISABELA SARAY PEREZ-PEREZ,

     Petitioners,

v.

PAMELA J. BONDI, United States
Attorney General,*

     Respondent.

No. 24-9520
(Petition for Review)

_____

**ORDER AND JUDGMENT**\*\*
_____

Before **HARTZ**, **KELLY**, and **BACHARACH**, Circuit Judges.
_____

---

     * On February 5, 2025, Pamela J. Bondi became Acting Attorney General of the United States.  Consequently, her name has been substituted for James R. McHenry, III as Respondent, per Fed. R. App. P. 43(c)(2).

     ** After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Rafael Jose Perez-Mavarez[1] petitions for review of the Board of Immigration Appeals (BIA) decision affirming immigration judge's (IJ) denial of his applications for relief from removal. Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we deny his petition for review.

## I.  BACKGROUND

### A.  Underlying Facts

Petitioner is a native and citizen of Venezuela who entered the United States without being admitted or paroled in June 2021. He was then placed in removal proceedings, and the IJ found him removable. Seeking relief from removal, Petitioner applied for asylum and withholding of removal.[2]

Before the IJ, Petitioner testified that he worked for the National Anti-Drug Office in Venezuela between 2005 and 2007. He resigned due to pressure from the government to politically indoctrinate local communities. After that, members of a gang known as los Gatos de los Barrosa threatened to beat and kidnap Petitioner numerous times because they believed he was sabotaging the government and

---

[1] Mr. Perez-Mavarez's minor daughter, Isabela Saray Perez-Perez, is a derivative beneficiary of his asylum application. She presents no claims or arguments distinct from his.

[2] Petitioner also applied for protection under the Convention Against Torture (CAT) and the agency denied relief. His opening brief lacks arguments challenging the agency's denial of his requests for CAT protection. Petitioner has therefore waived any argument regarding the agency's analysis of his CAT claims. *See United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) ("It is well-settled that arguments inadequately briefed in the opening brief are waived.") (brackets and internal quotation marks omitted).

damaging the gang's image.  Los Gatos is associated with Tupamaro, a paramilitary group with ties to the Venezuelan government.  Petitioner did not report the threats to police and fled to Ecuador.

He lived in Ecuador without incident until 2016.  While living in Ecuador, Petitioner worked for an organization doing social work in local communities.  He was asked to speak out in support of Ecuador's president at the time, Rafael Correa.  When he declined, the organization he worked for allowed him to distance himself from its work with the Correa government.

In July 2016, Petitioner returned to Venezuela to gather documents for his application for permanent residency in Ecuador.  Members of los Gatos beat him with a pistol and threatened him.  He sought medical treatment for his injuries and reported the incident to police.  The police provided him with some protection, sending patrol cars by his house at night, but Petitioner does not think they investigated the incident.

After Petitioner returned to Ecuador in August 2016, he was again asked to speak out in support of the Correa government, and he again declined.  Then, some Correa supporters who were associated with Tupamaro threatened to kidnap and beat Petitioner if he did not support their causes.  Correa supporters also disrupted some of the meetings Petitioner helped lead by showing up on motorcycles and throwing rocks and tear gas.  Police responded to protect Petitioner and the other meeting attendees, but Petitioner never filed a police report in Ecuador.  He received

additional threats in 2017 and 2020 related to his perceived opposition to the Correa government.

In 2017, Ecuador granted Petitioner temporary residency, and in November 2020, Petitioner received permanent residency in Ecuador. He could renew his status after ten years and was free to live, work, and drive there. He was also permitted to travel outside the country for up to three months at a time.

## B. Legal Standards

To receive asylum, an applicant must be a refugee. 8 U.S.C. § 1158(b)(1)(A). A refugee is a person who is unable or unwilling to return to—and unable or unwilling to avail himself of the protection of—his country because of past persecution or a well-founded fear of persecution on account of any of five protected grounds: race, religion, nationality, membership in a particular social group, or political opinion. *Id.* § 1101(a)(42)(A); *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015).

"Persecution is the infliction of suffering or harm upon those who differ [on protected grounds] in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty." *Ritonga v. Holder*, 633 F.3d 971, 975 (10th Cir. 2011) (internal quotation marks omitted).

To qualify for withholding of removal, an applicant must show "a clear probability of persecution on account of a protected ground." *Rodas-Orellana*, 780 F.3d at 987 (internal quotation marks omitted). This burden of proof is higher than the burden for asylum. *Id.* at 986.

## C. Agency Proceedings

The IJ denied relief for the claims based on Petitioner's ties to Venezuela. The IJ found that Petitioner could not receive asylum from Venezuela because he had firmly resettled in Ecuador. In support, the IJ noted that Ecuador granted Petitioner temporary residency in 2017 and permanent residency in 2020. The IJ determined Petitioner had not demonstrated an exception to the firm-resettlement bar. As for Petitioner's withholding claim, the IJ found the harm he endured in Venezuela did not rise to the level of persecution.

The IJ further denied relief on the claims related to Ecuador. For the asylum claim, the IJ determined the harm Petitioner endured in Ecuador did not rise to the level of persecution and he failed to demonstrate a well-founded fear of future persecution because the political party he opposed was no longer in power and because individuals similarly situated to Petitioner remained in Ecuador unharmed. Having found Petitioner had failed to meet his burden for asylum, the IJ concluded that he necessarily failed to meet the higher burden for withholding of removal.

The BIA upheld the IJ's decision. He timely petitioned this court for review.

## II. DISCUSSION

### A. Standards of Review

Where, as here, a single BIA member issues a brief order affirming an IJ's decision, we review both the BIA order and any parts of the IJ's decision it relied on. *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010). We review legal conclusions de novo and findings of fact for substantial evidence. *Id.* Under the

5

substantial-evidence standard, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## B. Asylum

### 1. Venezuela

Regarding his application for asylum from Venezuela, Petitioner argues the IJ and the BIA erred by applying the 2020 version of 8 C.F.R. § 1208.15 (the firm-resettlement regulation) because the regulation was updated on January 11, 2021. However, the government correctly objects that Petitioner's claim has not been exhausted because he did not raise it before the BIA. *See Miguel-Pena v. Garland*, 94 F.4th 1145, 1155 (10th Cir.), *cert. denied*, ___ S. Ct. ___, 2024 WL 4743083 (U.S. Nov. 12, 2024) (No. 24-12) (explaining "that issue exhaustion is a mandatory claim-processing rule that should be enforced where a party timely and properly objects.") (brackets, ellipsis, and internal quotation marks omitted).

Petitioner also argues the agency erred in finding him subject to the firm-resettlement bar. An applicant is ineligible for asylum "if he was firmly resettled in another country prior to arriving in the United States." *Matumona v. Barr*, 945 F.3d 1294, 1300–01 (10th Cir. 2019) (internal quotation marks omitted). Firm resettlement means that the applicant lived in another country that offered him "permanent resident status, citizenship, or some other type of permanent resettlement." *Id.* at 1301 (internal quotation marks omitted). If the government

6

presents evidence that the applicant firmly resettled, he bears the burden to show by a preponderance of the evidence that he did not. *Id.*

An applicant is not considered firmly resettled if, as relevant here, he establishes "[t]hat the conditions of his or her residence in that country were so substantially and consciously restricted by the authority of the country of refuge that he or she was not in fact resettled." 8 C.F.R. § 1208.15(b). In determining whether an applicant firmly resettled, the IJ:

> shall consider the conditions under which other residents of the country live; the type of housing, whether permanent or temporary, made available to the refugee; the types and extent of employment available to the refugee; and the extent to which the refugee received permission to hold property and to enjoy other rights and privileges, such as travel documentation that includes a right of entry or reentry, education, public relief, or naturalization, ordinarily available to others resident in the country.

*Id.*

Here, the IJ reasoned that Petitioner: (1) was granted a renewable legal status that permitted him to reside and work in Ecuador, (2) found work and housing in Ecuador, (3) was able to travel freely to and from Ecuador, and (4) "confirmed that he held all the rights and privileges associated with being an Ecuadorian resident." R. vol. I at 190. The IJ found that although Petitioner was threatened, he did not demonstrate that his residence in Ecuador was substantially and consciously restricted by authorities because his own testimony showed that when Correa supporters disrupted his work meetings, Ecuadorian police came to protect Petitioner and other meeting attendees. The BIA agreed with the IJ's reasoning and upheld the

determination that the problems Petitioner faced in Ecuador did not exempt him from the firm-resettlement bar. Substantial evidence supports the agency's determination.

## 2. Ecuador

The IJ denied asylum, reasoning that the unfulfilled threats and sabotaged meetings in Ecuador did not cumulatively rise to the level of persecution; the BIA agreed. On appeal, Petitioner argues Correa supporters acted upon the threats he received by sabotaging the meetings he helped lead.[3] However, the agency determined there was insufficient evidence that the dissidents had targeted Petitioner specifically because he was never harmed.

"Persecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012) (brackets and internal quotation marks omitted). After carefully examining the record, we cannot say that it compels the conclusion that Petitioner was persecuted in Ecuador. *See Matumona*, 945 F.3d at 1305 (reiterating that "only rarely do threats constitute actual persecution") (internal quotation marks omitted); *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280–81 (10th Cir. 2005) (upholding no-persecution finding where noncitizen was robbed, fondled, suffered a

---

[3] Petitioner also asserts that between 2016 and 2020, Correa supporters impeded the process for him to obtain permanent residency in Ecuador. The government argues Petitioner failed to exhaust this claim because he did not raise it before the BIA. We agree with the government and therefore decline to consider this unexhausted issue. *See Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) (holding that a noncitizen "must present the *same specific legal theory* to the BIA before he or she may advance it in court"), *abrogated on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411 (2023).

minor head injury, and later witnessed a mob beat up other guests at a relative's wedding).

## C. Withholding of Removal

### 1. Venezuela

In denying withholding of removal, the IJ reasoned that the threats and single beating Petitioner received in Venezuela did not rise to the level of persecution. The BIA agreed and cited cases from this court upholding a finding of no persecution in circumstances similar to this case. *See Matumona*, 945 F.3d at 1305; *Tulengkey*, 425 F.3d at 1280–81. The evidence here does not compel a finding of persecution. *See Xue v. Lynch*, 846 F.3d 1099, 1106–07 (10th Cir. 2017) (upholding finding that noncitizen's assault and four-day detention did not constitute persecution); *Sidabutar v. Gonzales*, 503 F.3d 1116, 1124 (10th Cir. 2007) (upholding no-persecution finding where noncitizen underwent extortion and multiple beatings resulting in injuries), *abrogated on other grounds by Santos-Zacaria*, 598 U.S. at 413.

### 2. Ecuador

Petitioner's failure to satisfy the burden of proof for asylum necessarily precludes him from meeting the higher standard for withholding of removal. *Rodas-Orellana*, 780 F.3d at 987.

9

## III. CONCLUSION

We deny the petition for review.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge