# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 17, 2025

Lyle W. Cayce
Clerk

No. 25-60427

Kun Liao,

*Petitioner*,

*versus*

Pamela Bondi, *U.S. Attorney General*,

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A240 514 352

_____

Before Elrod, *Chief Judge*, and Clement and Haynes, *Circuit Judges*.
Edith Brown Clement, *Circuit Judge*:

On August 11, 2025, Kun Liao, a native and citizen of the People's Republic of China, filed a pro se petition for review of a final order of removal issued by the Board of Immigration Appeals ("BIA") on July 2, 2025.[1] The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, restrains judicial review to a "final order of removal" and requires any petition be filed

---

[1] The court dismissed Liao's previous petition for review because he failed to timely file his brief on August 1, 2025. *See Liao v. Bondi*, No. 25-60256 (5th Cir. Aug. 11, 2025).

No. 25-60427

"not later than [thirty] days after the date of the final order of removal." 8 U.S.C. § 1252(a)(1), (b)(1). The Supreme Court last summer held in *Riley v. Bondi*, 606 U.S. 259 (2025), that this deadline is a "claim-processing rule" that regulates parties—not a jurisdictional restraint on courts—and left open the door for the government to raise untimeliness as a ground for dismissal. Because the government did not waive the application of § 1252(b)(1)'s deadline to Liao's untimely petition, the petition for review is DENIED.[2]

## I

On April 10, 2025, the BIA dismissed Liao's appeal from an Immigration Judge's decision to deny his application for asylum, withholding of removal, and protection under the regulations implementing the Convention Against Torture. Liao moved for reconsideration on May 13, and then moved to reopen his case on May 27.

On July 2, the BIA denied Liao's motion to reconsider as time-barred because it was filed thirty-three days after the entry of the BIA's April 10 decision. The BIA also denied Liao's motion to reopen, reasoning that, while Liao timely filed his motion to reopen on May 27, he failed to submit "new evidence" to support his motion under the governing regulations. Liao also moved to stay removal, which the BIA denied as moot.

The sole matter before the court concerns Liao's appeal of the BIA's July 2 order denying his motions to reconsider and reopen. His petition for review of that final order was received by the clerk on August 11 and docketed on August 13. The government moved to summarily deny his petition on August 20 based on untimeliness under 8 U.S.C. § 1252(b)(1). Liao has since

---

[2] This court received Liao's brief on September 15, 2025. We need not address whether his brief was timely under 8 U.S.C. § 1252(b)(3)(C) because we resolve this appeal on other grounds.

filed a flurry of motions, including an opposed motion for stay of removal, which this court granted and entered a temporary administrative stay.

## II

We review the BIA's legal conclusions de novo. *Rubio v. Bondi*, 147 F.4th 568, 576 (5th Cir. 2025). "If the Immigration Judge's reasoning influenced the BIA's decision, we consider that judge's decision." *Id.* (citing *Mejia-Alvarenga v. Garland*, 95 F.4th 319, 323 (5th Cir. 2024)).

## III

### A

The INA "governs how persons are admitted to, and removed from, the United States." *Pereida v. Wilkinson*, 592 U.S. 224, 227 (2021). An Immigration Judge conducts the initial proceedings; if the Immigration Judge orders the alien to be removed, the alien may appeal that decision to the BIA. *Mata v. Lynch*, 576 U.S. 143, 145 (2015). After the BIA renders a decision, an alien can then file a motion to reconsider or motion to reopen. *See* 8 C.F.R. § 1003.2. Circuit courts assume "jurisdiction when an alien appeals from the [BIA's] denial of a motion to reopen a removal proceeding [or of a motion for reconsideration]." *Lynch*, 576 U.S. at 147. "[A]ny review sought of a motion to reopen or reconsider [a removal order] shall be consolidated with the [underlying] order." 8 U.S.C. § 1252(b)(6). For these reasons, we have appellate jurisdiction to review "final order[s] of removal." *Id.* § 1252(a).

Here, the BIA denied Liao's motions to reconsider and reopen on July 2. We therefore have jurisdiction in this case. *Id.* § 1252(a)(1), (b)(6).

### B

Under § 1252(b)(1), an alien must file a petition for review "not later than [thirty] days after the date of the final order of removal." *Id.* This court received Liao's petition on August 11—forty days after the date of the final

order of removal. Seven days after Liao's petition was docketed, the government moved to deny his petition under § 1252(b)(1).

The core issue in this case is whether the government waived the application of § 1252(b)(1)'s thirty-day deadline to Liao's petition for review.

To begin, this case fits squarely within the parameters of *Riley*, which clarified the meaning and operation of § 1251(b)(1). Historically, § 1251(b)(1)'s filing rule has been characterized as a "jurisdictional" prerequisite that must be satisfied. *See Stone v. INS*, 514 U.S. 386, 405 (1995) (noting that "statutory provisions specifying the timing of review" are "mandatory and jurisdictional" (quotations omitted)). *Stone* ushered in a progeny of cases that seized on this jurisdictional framing of § 1251(b)(1)'s predecessor, but the Supreme Court later clarified *Stone*'s melding of jurisdictional rules with nonjurisdictional but mandatory ones. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 421 (2023). In *Riley*, the Court held that the thirty-day deadline under § 1251(b)(1) is a nonjurisdictional rule, also known as a "claim-processing rule." 606 U.S. at 274–77. To support that holding, *Riley* provided a detailed exegesis of the relevant distinction between (a) jurisdictional requirements and (b) nonjurisdictional but mandatory ones.

Jurisdictional requirements safeguard the power of courts. "A federal court must always satisfy itself that it has jurisdiction." *Id.* at 273. Without being first secure in its jurisdiction, a court cannot reach the merits. *See Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). Mindful of its limited power, courts require Congress to "clearly" suggest "that the rule is meant to have that status." *Riley*, 606 U.S. at 274. True, it "need not use magic words to speak clearly," *United States v. Kwai Fun Wong*, 575 U.S. 402, 436 (2015), but precedent showcases that we do not embrace a jurisdictional label "unless the signal is exceedingly strong," *Riley*, 606 U.S. at 274.

4

Nonjurisdictional claim-processing rules, by contrast, regulate parties and do not divest a court its power over a case. But just because a rule is "nonjurisdictional" does not necessarily mean it is not mandatory or that a court may otherwise close its eyes and "ignore" a timely objection. *Gonzalez v. Thaler*, 565 U.S. 134, 146 (2012); *see also Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 (2017) ("If properly invoked, mandatory claim-processing rules must be enforced, but they may be waived or forfeited." (emphasis added)). "A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s]' it." *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 549 (5th Cir. 2019) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)); *id.* (collecting cases for nonjurisdictional but mandatory principle). To be sure, a "[f]ailure to comply with a jurisdictional time prescription . . . deprives a court of adjudicatory authority over the case, necessitating dismissal," and "is not subject to waiver or forfeiture and may be raised at any time in the court of first instance and on direct appeal." *Hamer*, 583 U.S. at 20. Not so with claim-processing rules, which "are less stern." *Id.* Unlike jurisdictional rules, a party may forfeit an objection to a claim-processing rule "if the party asserting the rule waits too long to raise the point." *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004).

The distinctions between jurisdictional rules and nonjurisdictional claim-processing ones are not merely semantic but also have broad implications for the rule of law and the realities of case adjudication. *See Riley*, 606 U.S. at 274 ("[J]urisdictional rules have the unique capacity to disrupt the orderly adjudication of disputes."); *Henderson*, 562 U.S. at 434 ("Branding a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system."). *Riley* gives airtime to these concerns, concluding that § 1252(b)(1)'s thirty-day rule did not fulfill its "demanding requirement" to be a jurisdictional condition. 606 U.S. at 274.

No. 25-60427

We pause to acknowledge a potential gap in the precedent. While *Riley* held that § 1252(b)(1) was a nonjurisdictional claim-processing rule, it did not *expressly* conclude that this rule was, in fact, mandatory. Nevertheless, its exposition of the surrounding precedent strongly points us in that direction. *See id.* at 277 ("In these cases, like the present case, the statutes imposed requirements on litigants, not the courts."). We bridge that gap today because what *Riley* suggests, § 1252(b)(1)'s plain text confirms: "The petition for review *must be filed not later* than [thirty] days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1) (emphasis added). At its core, this claim-processing rule "seek[s] to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson*, 562 U.S. at 435. It is a "paradigmatic mandatory claim-processing rule." *United States v. Franco*, 973 F.3d 465, 468 (2020). Accordingly, we conclude that § 1252(b)(1)'s thirty-day filing rule is a mandatory claim-processing rule that, if properly raised, must be enforced.

C

With *Riley* in hand, we turn now to the facts in this case: Liao did not timely file his petition for review within the thirty-day window under § 1252(b)(1), and the government did not thereafter waive the application of that deadline to Liao's petition. Each are addressed in turn.

The thirty-day filing clock began on July 2, when the BIA denied Liao's motion to reconsider and reopen—the "final order." 8 U.S.C. § 1252(a)(1), (b)(1), (b)(6). His petition was due on August 1. *Id.* § 1252(b)(1). Yet the Clerk's Office received Liao's petition in the mail on August 11—*ten days* after the deadline. "[A] filing may be accomplished by mail addressed to the clerk, but filing is not timely unless the clerk *receives* the papers within the time fixed for filing." FED. R. APP. P. 25(a)(2)(A)(i)

(emphasis added). Liao's petition was therefore untimely by the terms of Federal Rule of Appellate Procedure 25(a)(2)(A)(i) and § 1252(b)(1).

Within seven days of Liao's petition being docketed, the government filed a dispositive motion requesting that this court summarily deny Liao's untimely petition under § 1252(b)(1). Unlike in *Riley*, where "the [g]overnment d[id] not wish to press" the thirty-day filing rule as a particular "ground for dismissal," 606 U.S. at 277, the government in this case has specifically pressed this challenge against Liao. We find that the government's direct challenge to Liao's untimely petition for review—filed within one week—was therefore not waived. *Cf. Eberhart*, 546 U.S. at 15.

Because *Riley* holds that § 1252(b)(1) is a claim-processing rule and the statutory text confirms it is mandatory, § 1252(b)(1)'s thirty-day filing deadline "must be enforced" against Liao's petition. *Davis*, 587 U.S. at 549.

Our holding today is further buttressed by recent circuit precedent, which acknowledged that a future panel could decide the extent to which *Riley* bars a petition for review outside the thirty-day window. *E.g., Romero-Lazano v. Bondi*, 150 F.4th 375, 377 (5th Cir. 2025) (explaining that "a future panel could decide whether *Riley* bars [an untimely] petition—and the [g]overnment could waive the timeliness issue"). Since *Riley*, other circuits have declined to answer this question because the government in those cases waived the application of this rule. *E.g., Castejon-Paz v. Bondi*, 143 F.4th 116, 118–19 (2d Cir. 2025) (denying motion to dismiss an untimely petition because the government waived the thirty-day deadline objection); *Pineda Valdez v. Bondi*, No. 23-2010, 2025 WL 2028069, at *2 n.3 (4th Cir. July 21, 2025) (declining to address timeliness because "[t]he government agree[d] that the petition for review is timely"). Yet that is not *this* case, where the government moved to deny Liao's petition as untimely a week after his petition was docketed. We hold that, since the government did not waive the

application of § 1252(b)(1)'s filing rule to Liao's untimely petition, this mandatory claim-processing rule must be enforced against Liao's petition.

D

Because Liao has been detained at the El Paso Service Processing Center ("El Paso SPC") since May 30, 2023, a special rule for filing pro se petitions—the prison mailbox rule—applies to him. FED. R. APP. P. 25(a)(2)(A)(iii). While *Riley* controls, this rule could provide aid to Liao.

"Under the prison mailbox rule, a pro se prisoner's pleading is considered filed when the document is placed in the prison mailing system." *United States v. Duran*, 934 F.3d 407, 412 (5th Cir. 2019). Rule 25(a)(2)(A)(iii)'s "Inmate Filing" provision states: "If an institution has a system designed for legal mail, an inmate confined there must use that system to receive the benefit of this Rule." *Id.* An inmate's non-electronically filed paper is considered "timely . . . if it is deposited in the institution's internal mail system on or before the last day of the filing," and it includes:

- a declaration in compliance with 28 U.S.C. § 1746—or a notarized statement—setting out the date of deposit and stating that first-class postage is being prepaid; or evidence (such as a postmark or date stamp) showing that the paper was so deposited and that postage was prepaid; or
- the court of appeals exercises its discretion to permit the later filing of a declaration or notarized statement that satisfies Rule 25(a)(2)(A)(iii).

*Id.*

The government argues that Liao has not met the conditions under Rule 25(a)(2)(A)(iii) to obtain the benefit of this rule. We agree.

For starters, Liao's petition does not indicate whether El Paso SPC has a designated mail system that he used to send his petition, so it is unclear whether he satisfies this threshold condition. *See* FED. R. APP. P. 25(a)(2)(A)(iii) ("*If* an institution has a system designed for legal mail, an inmate confined there *must* use that system to receive the benefit." (emphasis added)). But even if El Paso SPC has a designated legal-mail system, there is simply no evidence that Liao "deposited in the [El Paso SPC's] internal mail system [his petition] on or before the last day" of August 1. *Id.* That omission alone is enough for us to conclude Liao cannot "receive the benefit" of Rule 25(a)(2)(A)(iii)'s Inmate Filing provision. *Id.*

Moreover, Liao did not file a declaration in compliance with 28 U.S.C. § 1746. Liao's certificate of service states that he "filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the U.S. Post Service on 7-29-2025." It also states that he would "serve a copy of the foregoing and any attached pages to DHS/ICE Office of Chief Counsel – EPD by the U.S. Post Service to [address redacted]." This certificate does not "substantially" comport with § 1746(1), which requires that a declaration "substantially" state the following: "'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).'" *Id.* § 1746(2).

Nor is there evidence that Liao attached a notarized statement as plainly required by Rule 25(a)(2)(iii). At most, the envelope that Liao used to send his petition includes stamps for first-class postage, but it does not show the date of deposit or show other indications—postmark or date stamp— suggesting that it was, in fact, deposited in the El Paso SPC designated legal-mailing system. FED. R. APP. P. 25(a)(2)(A)(iii); *see also Duran*, 934 F.3d at 412 (the prison mailbox rule holds that a prisoner's document is considered "filed when [it] is placed in the *prison mailing system*" (emphasis added)).

No. 25-60427

Accordingly, the prison mailbox rule, as authorized under our federal appellate rules, does not save Liao's untimely petition from its defects.

IV

For these reasons, the government's motion to summarily deny Liao's petition for review is GRANTED and therefore the petition is DENIED. All remaining motions carried with this case are DISMISSED as moot.

JENNIFER WALKER ELROD, *Chief Judge*, dissenting:

I respectfully dissent because granting the government's motion to summarily deny Mr. Liao's petition based on the prison mailbox rule is not the proper way to resolve this case. Under the circumstances, we should allow Mr. Liao to file a new declaration that renders his petition timely.

The prison mailbox rule states that an inmate's non-electronically filed paper is timely "if it is deposited in the institution's internal mail system on or before the last day for filing" and either:

- it is accompanied by: a declaration in compliance with 28 U.S.C. § 1746—or a notarized statement—setting out the date of deposit and stating that first-class postage is being prepaid; or evidence (such as a postmark or date stamp) showing that the paper was so deposited and that postage was prepaid; or

- the court of appeals exercises its discretion to permit the later filing of a declaration or notarized statement that satisfies Rule 25(a)(2)(A)(iii).

Fed. R. App. P. 25(a)(2)(A)(iii).

Under this rule, we should allow Mr. Liao to file another declaration certifying all of the necessary details. Mr. Liao is a *pro se*, detained asylum seeker and non-native English speaker. He has had much difficulty communicating with the court and transmitting documents from the El Paso Service Processing Center to the court in a timely manner, despite his apparent good-faith efforts. Multiple times, he placed documents in the mail at the El Paso SPC, with timestamps indicating that he had deposited them timely according to the prison mailbox rule, but they took many days or weeks to arrive at the court. That could well be the case for his petition, too.

Moreover, Mr. Liao has already provided us with all of the information needed to bring his petition and declaration into compliance. In

No. 25-60427

his response to the government's motion for summary denial of his petition, Mr. Liao asserts that he deposited his petition in the El Paso SPC's internal mail system on July 29, 2025—several days before the filing deadline. He also avers that his failure to note the date of deposit and that first-class postage was being prepaid was because he is *pro se* and lacking in English language ability, and he states that he now understands that this information must be stated explicitly in the declaration. Thus, denying Mr. Liao's petition based on the prison mailbox rule is truly elevating form over substance.

Mr. Liao's case is the exact type of case that the prison mailbox rule was designed for. I would therefore give him the opportunity to cure the defects in his petition and declaration through the filing of a new declaration, which would then allow us to reach the merits. I respectfully dissent.